IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| LISA MCKINNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: _____ |
| | ) | |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | ) ) | |
| | ) | |
| AND | ) | |
| | ) | |
| DUKE UNIVERSITY | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now the Plaintiff, Lisa McKinnon, and hereby files her Complaint against Liberty Life Assurance Company of Boston and Duke University.

## PARTIES

1. The Plaintiff, Lisa McKinnon ("Ms. McKinnon"), is an insured under Duke University's ERISA-governed Group Long-Term Disability Policy, Claim No. 7557761 (the "Plan") who has been improperly denied disability benefits under the Plan.

2. Defendant, Liberty Life Assurance Company of Boston ("LIBERTY"), is the Administrator for the Plan issued to Duke University. Defendant has improperly denied owed benefits to Ms. McKinnon under Duke

University's Group Long-Term Disability Policy, Claim No. 7557761. Upon information and belief, Liberty is a foreign corporation doing business throughout the United States, in the State of North Carolina and in this district.

3. Defendant, Duke University ("DUKE"), is the Sponsor of Duke University's Group Long-Term Disability Policy. Defendant has improperly denied owed benefits to Ms. McKinnon under the Plan. Upon information and belief, Duke University is a domestic non-profit corporation doing business in the State of North Carolina and in this district.

## JURISDICTION AND VENUE

4. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. Plaintiff asserts claims for long-term disability benefits, enforcement of ERISA rights, and statutory violations of ERISA under 29 U.S.C. §1132. This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §1132(a),(e)(1) and (f) and 28 U.S.C. §1131. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

## INTRODUCTION

5. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. McKinnon, as an employee insured

2

for disability, was supposed to be treated as a beneficiary by the Defendants as statutory fiduciaries. Instead, the Defendants victimized Ms. McKinnon by engaging in utterly reprehensible claim handling procedures. The shortcomings of ERISA as it relates to claims for "welfare" benefits have been exploited by the Defendants to avoid paying Ms. McKinnon's valid claim that would otherwise be payable under state insurance law. As described in more detail below, the Defendants have clearly engaged in bad faith claim handling and Ms. McKinnon, at a minimum, is patently entitled all relief that ERISA provides.

## STATEMENT OF FACTS

6. Ms. McKinnon is an insured under Group Long-Term Disability Policy Claim No. 7557761 sponsored by her employer, Duke University. The policy provides beneficiaries, like Ms. McKinnon, long term disability ("LTD") benefits.

7. Ms. McKinnon was born July 24, 1966, and is currently fifty-two years old. She worked in the Duke University Healthcare System for over 25 years and specifically worked at Duke University as a Claims Manager Analyst for over 13 years. She was a model employee receiving commendations and bonuses for her productivity until her health deteriorated and caused her to become unable to continue to perform her work accurately and timely. She tried to work with pain for several years before becoming disabled from all work as of May 16, 2017.

3

8. Ms. McKinnon's medical conditions include severe neck and bilateral knee pain; fibromyalgia; cervical radiculopathy with degenerative disc disease at C3 and C4 with central protrusion at C4-C5 with osteophyte complex; lumbar radiculopathy; degenerative disc disease at L5 through S1; lumbar facet arthropathy with gait impairment; diffuse myofascial pain syndrome; hypertension; neuropathic pain in the lower extremities; chronic fatigue; and Type 2 diabetes. Ms. McKinnon has limited range of motion and suffers impairing side effects from her prescribed medications including drowsiness, nausea and impaired judgment. In addition to her independently disabling physical impairments, Ms. McKinnon also suffers from depression. However, her physical conditions and symptoms alone are enough to render Ms. McKinnon unable to work.

9. Defendants denied Ms. McKinnon's claim by letter dated November 8, 2017. Defendants based the denial on the reviews of Liberty's paid consultants. Despite overwhelming objective evidence to the contrary, one consultant found that Ms. McKinnon's restrictions and limitations would allow her to perform sedentary work. The other consultant acknowledged that Ms. McKinnon's diagnoses were supported but claimed she suffered no restrictions and limitations at all. (*See* November 8, 2017 LTD Denial Letter from Liberty, attached hereto as Exhibit "A").

10. Ms. McKinnon appealed the denial by letter dated May 7, 2018, and submitted supportive statements from her surgeon and primary physician as well as

additional treatment notes. (*See* LTD Appeal dated July 17, 2017, attached hereto as Exhibit "B" (without enclosures)).

11. Despite receiving extensive evidence of Ms. McKinnon's chronic unrelenting pain, limited range of motion, and other debilitating side effects from her necessary medications, Defendants upheld their denial by letter dated June 11, 2018. (*See* LTD Appeal Denial Letter dated June 11, 2018, attached hereto as Exhibit "C").

12. Plaintiff submitted a second appeal to Defendants on August 9, 2018. In addition to updated medical records, Plaintiff also provided a medical source statement and a functional capacity evaluation ("FCE") report in support of her claim. Liberty was put on notice that a Social Security decision was expected soon, and that Ms. McKinnon reserved the right to supplement her appeal with additional SSA evidence upon receipt. (*See* 2nd Appeal Letter dated August 9, 2018, attached hereto as Exhibit "D" (without enclosures).

13. In the medical opinion letter provided to Liberty, Dr. Joyce Copeland, M.D. stated, in part:

> I have been Lisa [McKinnon's] primary care physician for over 15 years. She has a history of the following conditions:
> - Fibromyalgia
> - Cervical radiculopathy with degenerative disc disease at C3 and C4 with central disc protrusion and at C4-C5 with osteophyte complex
> - Lumbar radiculopathy in the setting of degenerative disc disease at L5 through S1

5

- Lumbar facet arthropathy with gait impairment
- Diffuse myofascial pain syndrome
- Hypertension
- Neuropathic pain in the lower extremities
- Chronic fatigue
- Depression
- Type 2 diabetes

(*See* Medical Opinion Letter by Dr. Joyce Copeland dated July 27, 2018, attached hereto as Exhibit "E").

14. Dr. Copeland went on to list Ms. McKinnon's medications and further stated:

> Potential side effects from medication include drowsiness and potential impaired judgment. Her ongoing symptoms and medications have led to requiring her daytime rest of at least 2-3 hours per day in addition to her nighttime rest.
>
> She describes the following symptoms:
> Difficulty focusing, headaches, pain, fatigue, and side effects from prescribed medications. This is interfered with her ability to sustain employment of any kind. She had a functional capacity exam through our occupational therapy program. Resulted in an opinion that she was capable of less than sedentary work.
>
> We have been working with Ms. McKinnon on this for several years and her symptoms have been persistent over those years. She has had several attempts to accommodate her physical capacity with modifications of work location and workload. She has not been successful in maintaining the competent work load.
>
> I would appreciate if you take these issues into consideration. We have submitted copies of her cervical MRI as well as thoracic and lumbar MRIs in the past. She has retrolisthesis of C4 on C5 with bulging disc. This was found to be worsening over the course of several MRIs. She also has spinal canal narrowing at C3-C4. MRI of the lower spine was consistent with loss of disc space at L5 and S1 with some compression on the S1 neve. She has failed conservative intervention.

(Exhibit "E")

15. Liberty was also provided with a letter from Dr. Anne Marie Fras, M.D. dated July 26, 2018, in which she explained that she does not perform disability assessments but described Ms. McKinnon's treatment plan stating, in part:

> Ms. McKinnon was initially seen in the Duke pain clinic on 8/18/2014 for low back pain with lumbar radiculopathy, neck pain with cervical radiculopathy and myofascial pain. She was treated with a number of medications, physical therapy, trigger pain injections, cervical epidural steroid injection as well as an intravenous lidocaine infusion. Unfortunately, she saw limited overall benefit from the above therapies.

(*See* Medical Opinion Letter by Dr. Fras dated July 26, 2018, attached hereto as Exhibit "F").

16. Plaintiff also provided Liberty with a report of a functional capacity evaluation dated June 25, 2018. The report contained the following findings:

> During today's evaluation, the client demonstrated difficulty tolerating prolonged sitting and requested to lie down during part of the evaluation due to the pain that was provoked with sitting. The client's impaired sitting tolerance is not compatible with competitive employment and the below normal score in her cognitive screening assessment indicates that Ms. McKinnon would have difficulty with accuracy of work due to poor memory recall. The client's overall lifting and walking tolerances have declined since her last FCE in 2017.
>
> As the client does not meet the physical tolerances for Sedentary levels of work, she is considered to be functioning Below a Sedentary Level.

(*See* FCE Report dated June 25, 2018, attached hereto as Exhibit "G").

17. By letter dated September 27, 2018, Plaintiff notified Defendants that she had been approved for Social Security benefits on the record without the need of a hearing before an administrative law judge. (*See* Correspondence to Liberty dated September 27, 2018, re favorable Social Security Decision, attached hereto as Exhibit "H").

18. In an effort to satisfy a request for additional imaging by Defendants' medical consultant, Ms. McKinnon's physician ordered additional imaging and the report was provided to Liberty by letter dated October 28, 2018. (*See* Correspondence to Liberty dated October 28, 2018, re Additional Imaging, attached hereto as Exhibit "I").

19. By letter dated October 29, 2018, the Liberty notified Plaintiff that it needed to take a 45-day extension to make a decision and would render a decision by November 27, 2018. (*See* Correspondence from Liberty dated October 29, 2018, re Extension, attached hereto as Exhibit "J").

20. Despite overwhelming evidence supportive of Ms. McKinnon's disability, Liberty issued a final denial by letter dated November 15, 2018. (*See* Final Denial Letter dated November 15, 2018, attached hereto as Exhibit "K").

21. That same day, Plaintiff provided Liberty with a Physical Residual Functional Capacity Questionnaire prepared by Dr. Copeland. (*See* Correspondence

to Liberty dated November 15, 2018, enclosing RFC, attached hereto as Exhibit "L").

22. Without providing the additional information to its medical and vocational consultants, Liberty responded the same day stating that the new evidence did not alter its appeal decision. (*See* Correspondence from Liberty dated November 15, 2018, re Decision not Altered, attached hereto as Exhibit "M").

23. As of this date Ms. McKinnon has been denied benefits rightfully owed to her under the plan. Defendants' decision to deny LTD benefits under the plan was grossly wrong, without basis and contrary to the evidence.

24. Ms. McKinnon met and continues to meet the plan's definition of "disabled."

25. The Defendants did not establish and maintain a reasonable claim procedure or provide a full and fair review of Ms. McKinnon's claim as required by ERISA. Instead, Defendants acted only in their own pecuniary interests and violated ERISA by conduct including, but not limited to, the following: reviewing the claim in a manner calculated to reach the desired result of denying benefits; failing to properly consider and credit the medical opinions of Ms. McKinnon's medical providers; failing to properly consider and credit the SSA's determination; and failing to have Ms. McKinnon submit to independent medical exams as allowed by the Plan.

26. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Defendants or to any other entity who may have adjudicated Ms. McKinnon's claim. Therefore, the Court should review the Plaintiff's claim for benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the alternative, the denial of Plaintiff's benefits constitutes an abuse of discretion.

27. Upon information and belief, Defendants were required to both evaluate and pay claims under the Plan at issue, creating an inherent conflict of interest.

28. Ms. McKinnon has exhausted any applicable administrative review procedures, and Defendants' refusal to pay benefits is both erroneous and unreasonable and has caused tremendous financial hardship on Plaintiff.

## **DEFENDANTS' WRONGFUL AND UNREASONABLE CONDUCT**

**A. Defendants' Determination that Plaintiff does not Meet the Definition of Disability as Stated in the Plan was both Erroneous and Unreasonable.**

29. According to Liberty, the Long-Term Disability plan defines disability as follows:

*You are unable to perform the essential duties of your own occupation during the first 24 months of disability payments due to sickness or accidental injury. After 24 months, you are unable то perform the essential duties of any occupation you are or could reasonably become qualified for by education, training, or experience.*

(*See* Exhibit "A").

30. Defendants' decision to terminate benefits was based on flawed and unreliable medical and vocational evidence and analyses that were obtained from biased and conflicted sources. Defendants also disregarded reliable evidence establishing Ms. McKinnon's ongoing disability.

31. Ms. McKinnon struggles with debilitating pain and symptoms from her conditions every single day. Ms. McKinnon met and continues to meet the definition of disabled under the policy. Defendants' assertion that she is not disabled is at the very least unreasonable.

**B.   Defendants' Decision to Deny Long Term Disability Benefits was not Supported by Substantial Evidence.**

32. In its consideration of Ms. McKinnon's claim, Defendants only retained paid consultants to review her medical records. The sole reason for Defendants' denial was that their paid paper reviewers, who never actually examined Ms. McKinnon, determined that she did not suffer disabling restrictions and limitations.

33. Considering the nature of her conditions and her well-documented struggles with treatment, the notion that she is not restricted from work is absurd. Based on the language of the policy and common-sense practice, Defendants could have requested an independent medical examination of Ms. McKinnon. Instead, it determined that an in-house vocational analysis and paid paper reviews were

11

superior to years of treatment records and recommendations from Ms. McKinnon's actual treating physicians.

34. Ms. McKinnon's medical files clearly demonstrate that she is disabled. Ms. McKinnon's treating physicians have attested to her disabilities on multiple occasions. Liberty was provided with numerous capacity reports that consistently stated Ms. McKinnon would be disabled indefinitely. Liberty also had access to the Social Security Administration's determination of disability, as well as records from Ms. McKinnon's treating physicians clearly documenting Ms. McKinnon's constant struggle with debilitating pain.

35. The records of Ms. McKinnon's long-standing medical providers, who have no stake in the outcome of the case, clearly evidence that she is disabled based on their numerous personal examinations, testing, and procedures. Their opinions are consistent with the record as a whole.

36. Defendants' hired medical reviewers, on the other hand, did not examine Ms. McKinnon. The conclusion that Ms. McKinnon was not disabled was based merely on hired reviewers' assessment of her medical records. The opinions of Liberty's medical reviewers do not support the denial of benefits because the opinions of these non-examining consultants hired by the Defendants are the only "evidence" contrary to the opinions of Ms. McKinnon's treating physicians.

37. Not only did Liberty's hired medical consultants never examine Ms. McKinnon but there is no evidence to support their position that she was less restricted than indicated by her treating physicians.

38. Ms. McKinnon's own medical physicians' evaluations were objective and reliable and should have been afforded far greater weight than those of consultants hired by Defendants, especially since Defendants' reviewers never bothered with even one physical exam. Accordingly, Defendants' denial of Ms. McKinnon's LTD benefits, based on insufficient evidence.

**C.  Defendants' Failure to Properly Credit Ms. McKinnon's Well-Documented Complaints Pain was Arbitrary and Capricious.**

39. Ms. McKinnon's primary disabling impairments have been established by objective proof and have been diagnosed by her treating physicians based on her medical history, physical examinations, imaging and observation.

40. While pain can be a subjective component of Ms. McKinnon's conditions, her conditions could reasonably cause the level of pain claimed by Ms. McKinnon.

41. In its denial letters, Defendants made no mention of how Ms. McKinnon's severe pain and fatigue from her necessary medical treatments would affect her ability to perform work.

13

42. The record in this case reveals well-documented complaints of debilitating pain. There is no objective evidence to contradict Ms. McKinnon's complaints and therefore Defendants cannot discredit her subjective complaints.

43. It was substantively unreasonable for the Defendants to deny benefits for Ms. McKinnon's disabilities involving subjective elements such as pain and fatigue.

44. Ms. McKinnon provided chart notes, standard diagnoses, imaging and lab reports from multiple physicians to support her claim.

45. Liberty made no effort to evaluate the veracity of Ms. McKinnon's claim and did not identify what objective evidence she could have or should have produced to be sufficient to prove subjective elements of her claim.

46. Ms. McKinnon's medical records contain well-documented complaints of pain and treatments prescribed by her treating physicians. The records provided to Defendants show Ms. McKinnon's long-time struggles with pain and fatigue as well as a host of other side effects from her necessary medications.

47. Defendants did not credit these well-documented complaints or the opinions of Ms. McKinnon's treating physicians, and instead unreasonably denied her claim.

48. In its review, Defendants also failed consider non-exertional limitations including (1) memory limitations, including those related to the side effects of prescription medications and pain; (2) limited manual dexterity and range of motion;

and (3) a limited ability to remain seated for an extended period of time. Such non-exertional limitations are important aspects of vocational capacity that Liberty did not properly evaluate.

## D. Defendants Failed to Justify Taking a Position Different from the Social Security Administration on the Question of Disability

49. Defendants failed to discuss any substantive reasons for reaching a decision contrary to that of the SSA.

50. In stark contrast to Defendants' findings that Ms. McKinnon has no medical impairment that would limit her ability to perform any occupation, the Social Security Administration found Ms. McKinnon to be disabled and awarded her SSD benefits.

51. Though Ms. McKinnon's claim for disability was strong enough to overcome the daunting odds for a Social Security claimant, Defendants simply have not fully addressed or given the appropriate weight to the favorable decision and Social Security evidence.

52. Liberty was given a copy of Ms. McKinnon's entire Social Security claim file, but in its denial letter it failed to adequately explain why it reached a conclusion contrary to that of the Social Security Administration's finding of disability.

15

Case 5:19-cv-00205-FL   Document 1   Filed 05/10/19   Page 15 of 18

53. Liberty did nothing more than merely mention Ms. McKinnon's Social Security approval in its review of her claim. It was inappropriate for Defendants to discount the SSA evidence in making the benefit determination.

## CAUSES OF ACTION

### Count One
### ERISA (Claim for Benefits Owed under Plan)

54. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

55. At all times relevant to this action Ms. McKinnon was a participant of Duke University's ERISA-governed Group Long-Term Disability Policy, Claim No. 7557761 (the "Plan") within the meaning of 29 U.S.C § 1002(7) and was eligible to receive disability benefits under the Plan.

56. As more fully described above, the denial and refusal to pay Ms. McKinnon benefits under the Plan for the period of at least on or about August 2017 through the present constitutes a breach of Defendants' obligations under the plan and ERISA. The decision to terminate benefits to Ms. McKinnon was not reasonable and it was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and otherwise enter an Order providing that:

1. The applicable standard of review in this case is *de novo*;

2. That the Court may take and review the records of Defendants and any other evidence that it deems necessary to conduct an adequate *de novo* review;

3. From at least May 2017 through the present, Ms. McKinnon met the Plan's definition of disabled;

4. Defendants shall pay Ms. McKinnon all benefits due for the period from at least August 2017 through the present in accordance with the policy;

5. Defendants shall pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment in accordance with 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3);

6. Defendants shall continue paying Plaintiff's LTD benefits in an amount equal to the contractual amount of benefits to which she is entitled through the Policy's Maximum Benefit Period, so long as she continues to meet the policy conditions for continuance of benefits;

7. Defendants shall pay attorney's fees for Plaintiff's counsel pursuant to 29 U.S.C. § 1132(g);

8. Plaintiff be awarded any and all other contractual and/or equitable relief to which she may be entitled, as well as the costs of suit.

Respectfully Submitted,

 /s/ Brian L. Kinsley_____
Brian L. Kinsley
blkinsley@crumleyroberts.com
CRUMLEY ROBERTS, LLP
2400 Freeman Mill Road, Ste. 200
Greensboro, NC 27406
Phone: 336-333-9899
Fax: 336-333-9894
NC State Bar No. 38683

Amanda Stansberry
*Appearance anticipated*
STANSBERRY LAW, LLC
420 N. 20TH Street
Suite 2200
Birmingham, Alabama 35203
Phone:    205-379-1059
Fax:    833-583-4357
amanda@stansberrylaw.com

*Attorneys for Plaintiff Lisa McKinnon*

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Liberty Life Assurance Company of Boston
100 Liberty Way
Dover, NH  03820

and

Duke University
c/o Pamela J. Bernard
310 Blackwell Street, 4th Floor
Durham, NC  27701